IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN R E : | § | |
| | § | CASE NO. 05-10151 |
| SAN NGOC HOANG | § | CHAPTER 1 3 |
| NGA TRAN HOANG | § | |
| DEBTORS | § | HEARING: MOTION TO LIFT |
| | § | S T A Y |
| CHRISTOPHER PHAM | § | |
| M OV A N T | § | DATE: APRIL 27, 2 0 0 5 |
| V S . | § | |
| | § | |
| SAN NGOC HOANG | § | |
| NGA TRAN HOANG | § | |
| RESPONDENT | § | |

DEBTORS' BRIEF IN SUPPORT OF DENYING THE MOTION RELIEF FROM
AUTOMATIC STAY TO ENFORCE LIEN AGAINST F/V MASTER DALE OR
ALTERNATIVELY, FOR ADEQUATE PROTECTION, AND WAIVER OF THIRTY DAY
HEARING REQUIREMENT, AND REQUEST FOR HEARING IN BEAUMONT, TEXAS
FILED BY CHRISTOPHER PHAM

TO THE HONORABLE BANKRUPTCY JUDGE:

COMES NOW, Robert E. Barron, P.C. and files this Brief in Support of Denying the Motion

Relief From Automatic Stay to Enforce Lien Against F/V Master Dale or Alternately, For

Adequate Protection, and Waiver of Thirty Day Hearing Requirement, and Request for Hearing

in Beaumont, Texas filed by Christopher Pham (hereinafter referred to as "Motion to Lift Stay"

and would respectfully show the Court as follows:

Procedural History

    1. The Debtors filed this voluntary petition under Chapter 13 of the United States

Bankruptcy Code on February 3, 2005.

2. The Movant filed a Motion for Relief from Automatic Stay on March 10, 2005.

Background Facts

3. The Debtors operate a shrimping boat, F/V Master Dale. On November 27, 2004, the Movant was allegedly injured on the Debtors' boat.

4. After the injury, the Movant sent the Debtors hospital bills and made demands that the Debtors must pay to the Movant maintenance payments along with the hospital bills.

Discussion Regarding Origin of Maintenance and Cure Payments

5. Maintenance and cure is a venerable maritime doctrine that the U.S. Supreme Court initially recognized in The Osceola, 189 U.S. 158, 175 (1903). The Jones Act codifies the common law doctrine of maintenance and cure. However, a seaman's claim for maintenance and cure is not based on the Jones Act but rather upon an ancient doctrine of maritime law. Phillips v. Luckenbach S. S. Co., 227 F. Supp. 195, 198 (S.D.N.Y.1964). Essentially, maintenance is an amount of money to which a seaman is entitled for daily living expenses (food and lodging) he would have received had he been able to continue working aboard the ship. Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528 (1938). (See also Movant's Motion to Lift Stay page 5 paragraph 13). Cure is the necessary medical services that the seaman actually incurred. However, recent cases have indicated that the shipowner's obligation to pay cure payments is satisfied if the seaman is eligible for Medicaid or Medicare. Moran Towing & Transp., Co. v. Lombas, 58 F.3d 24, 25 (2d Cir. 1995), See also Toulson v. Ampro Fisheries, Inc., 872 F. Supp. 271, 276-277 (E.D. Va. 1995)

6. The obligation for maintenance and cure arises from an implied provision of the maritime employment contract which is given by general maritime law. Lauritzen v. Larsen, 345

U.S. 571, 588 (1953).  Most of the cases state the obligation is contractual or quasi-contractual.

The vessel owner's obligation to pay maintenance and cure does not depend upon negligence or

culpability of the owner.  Evans v Blidgberg Rothchild Com., 382 F.2d 637, 639 (4th Cir. 1697).

Under the Jones Act, the employer has a nondelegable duty to provide an injured seaman with

maintenance and cure without reference to liability until injured seaman reaches maximum

medical improvement. Musielak v. Rowan Intern., Inc., 814 F. Supp. 556 (S.D. Tex.1993).

       7.  Failure to pay maintenance and cure appears to create a federal maritime lien.

> "A federal maritime lien arises as a special property right in a vessel, arising in favor of
> creditor by operation of law as security for debt or claim; the lien arises when debt arises,
> and grants creditor right to appropriate vessel, have it sold, and be repaid debt from
> proceeds." Equilease Corp. v M/V Sampson, 793 F.2d 598, 602 (5th Cir. 1986).

Discussion Regarding the Policy Behind Maintenance and Cure

       8.   Maintenance and cure is a long standing remedy in the maritime law.  In the United

States, the origin traces back to the early 1900s.  The primary reason the remedy was fashioned

was to protect the "poor, friendless, and improvident" seaman "from the hazards of illness and

abandonment while ill in foreign ports . . . "  Harden v Gordon, Fed. Cas. No. 6047 (C.C.) (1823)

The remedy of maintenance and cure automatically makes a shipowner liable for payments

regardless of whose at fault and creates a lien in favor of the injured seaman for these payments.

       9.  While the policy to protect seamen is admirable and necessary in most context, in this

situation, the policy conflicts with bankruptcy law.  The shipowner is seeking bankruptcy

protection, and bankruptcy law is designed to protect the debtors, the bankruptcy estate, and

creditors involved in the bankruptcy.  In this case, the debtor/shipowner is an individual who has

filed for bankruptcy protection and is attempting to reorganize his debts so that his business can

continue.  The debtor only has one vessel which is property of the estate.  The debtor needs this

vessel in order to make payments under the Chapter 13 plan.  The intent of bankruptcy law is to protect the debtor, the bankruptcy estate, and adjudicate all claims for creditors equitably and fairly.  In this situation, the bankruptcy intent to protect the debtor and all parties in interest outweigh the admiralty policy to protect seaman.

<u>Discussion Regarding Whether Maritime Liens are Secured in Admiralty Courts</u>

10.  In admiralty courts, maritime liens are secured by the vessel for non-payment. Admiralty court and maritime liens have a very different hierarchy as described below for secured creditors than land-based transactions.

<u>Discussion Regarding the Inapplicability of the<br>Doctrine of Custodia Legis to Reorganization Cases</u>

11.  Bankruptcy courts and admiralty courts have concurrent jurisdiction and depending on whether the debtor is filing a petition for liquidation or reorganization determines which law to apply.  <u>Costal Prod. Credit Ass'n v O/S Santee</u>, 51 Bankr. 1018, 1021-1022 (S.D. Ga. 1985). The doctrine of custodia legis, the recognition of maritime lienor as a secured creditor, has been applied to a petition for liquidation because of the view that liquidation procedures are entirely consistent with the goals of admiralty law.  <u>Id</u>.

12.  However, courts have reached inconsistent results in determining whether custodia legis applies in a petition for reorganization.  A majority of courts have concluded that reorganizations are to be treated differently than liquidations and that custodia legis is inapplicable in reorganization cases.  <u>Id</u>.  See also <u>In re:  J.S. Gissel & Co.</u>, 238 F. Supp. 130, 132-33 (S.D. Tex. 1965).

13.  When a debtor seeks bankruptcy relief via reorganization, the debtor is attempting to continue his business and restructure his debts.  Bankruptcy courts were created to help the

debtor have some breathing room to continue his business and adjudicate all creditors claim efficiently and fairly. However, admiralty law confers special liens to creditors who have an interest in the vessel either because the creditor work on the vessel, provided the vessel with supplies, or by operation of law. For instance, a maritime lien arises by operation of law and not by specific agreement between the parties. Equilease Corp. v M/V Sampson, 793 F.2d 598, 602 (5th Cir. 1986).

14. However, the bankruptcy code clearly defines a security interest as a lien created by agreement between the parties. 11 U.S.C. § 101 (45). Thus, the maritime lienor resembles a general creditor whose claim upon the property arises without specific agreement between the parties. Staring, Bankruptcy: An Historical View, 59 Tul. L. Rev. 1157, 1176 (1985).

15. Admiralty law and Chapter 13 and 11 Bankruptcies for reorganization have very different goals. It is clear that admiralty law favors maritime creditors over non-maritime creditors whereas bankruptcy law in a case for reorganization enables the court to distribute funds equitably and efficiently.

16. If the court applied the doctrine of custodia legis to reorganization cases, the purpose of reorganization cases could easily be frustrated. Two of the primary purposes of bankruptcy are an equitable distribution of the debtor's assets to his creditors and equality to all creditors. United States v. LeBouf Bros. Towing, 45 Bankr. 887, 890 (E.D. La. 1985). Because bankruptcy courts consider the claims of all creditors, including maritime lienors, and seeks to protect the rights of creditors, bankruptcy law provides the fairest rules to all parties involved in the bankruptcy.

17. In addition, the 1984 Bankruptcy Amendments contribute to the demise of custodia

legis because the amendments make bankruptcy courts a unit of the district court. Now the

bankruptcy courts have the power to hear and determine all cases and core proceedings related to

Title 11, 28 U.S.C. §157(b)(2)(K). In addition, the district court and thus the bankruptcy court

have been granted the exclusive jurisdiction over all property belonging to the debtor and his

estate, wherever such property is located. 28 U.S.C. § 1334(d) (Supp. III 1985). Thus

bankruptcy courts have the power to hear and determine all cases related to or arising out of

debtor's bankruptcy. However, admiralty claims may be spread all over the world. This

fragmentation undermines judicial economy. Clearly, bankruptcy law is the fairest and most

efficient law to adjudicate maritime claims along with other creditor claims. In a reorganization

case, judicial economy necessitates that bankruptcy law be used.

18. Thus the court should apply bankruptcy law for the following reasons: 1) the

policies behind bankruptcy protection outweigh the need to protect a seaman in this situation, 2)

the doctrine of custia legis is not applicable in a reorganization and thus Christopher Pham is a

general unsecured creditor, and 3) judicial economy.

Discussion Regarding Amount of Maintenance and Cure

19. Even if this court applies admiralty law and determines that the Debtors have to pay

maintenance and cure, the amount of maintenance and cure must be determined.

20. In Moran Towing & Transp., Co. v. Lombas, 58 F.3d 24, 25 (2d Cir. 1995), the 2nd

Circuit held that the availability of surgical care to an injured seaman under Medicare program

satisfies the vessel owner's obligation to furnish cure. Likewise, in Toulson v Ampro Fisheries,

Inc., 872 F. Supp. 271, 276-277 (E.D. Va. 1995), the court held "as a matter of law that Medicare

or Medicaid can satisfy a shipowner's duty to cure." The court further stated that the burden is

on the seaman to prove that he is not eligible for assistance.  Id.  Pursuant to the testimony of the

Debtors, Christopher Pham is eligible for Medicaid but refuses to claim the medical bills under

Medicaid.  Thus the Debtors have no obligation to make cure payments because Christopher

Pham is eligible for Medicaid.

21.  Pursuant to the Motion to Lift Stay page 5 paragraph 13, "the ship owner is required

to furnish the seaman with food and lodging of the kind and quality he would have received had

he been able to continue working aboard the ship."  Pursuant to the testimony of the Debtors, the

Debtors spend $450 on food every two weeks for four people on the boat.  Thus the cost of food

per person each day is around $8.  Pursuant to the testimony of the Debtors, the lodging on a

shrimping boat is a room with four bunks and usually containing three people in the room.  The

Debtors will testify that the value of that lodging is around $7.50 per person per day.

22.  The Movant indicates that the obligation terminates when "maximum cure has been

obtained."  (Motion to Lift Stay page 5, paragraph 14).  It is unclear how long this obligation will

continue.  In addition, the Movant does not address the whether the payments can be mitigated

because the seaman found other comparable employment and thus can provide for himself.

### Conclusion

23.  The Movant has requested that this Court lift the automatic stay so that he can

enforce his lien against the F/V Master Dale.  The F/V Master Dale is necessary for the Debtors

in this reorganization case.  It is necessary to the Debtors because the Debtor is a shrimper and

needs his vessel in order to make the payments under the Chapter 13 Plan.  Alternately, the

Movant requests for payments of maintenance and cure during the Chapter 13 Plan.  For the

reasons state in the brief, a claim for maintenance and cure payments should be a general

unsecured claim.  However, if this court decides to apply admiralty law instead of bankruptcy law, the cure payments should not be allowed because Christopher Pham is eligible for Medicaid; the maintenance payments should be $15.50 a day and the court can determine the length of payments.

DATED:  April 22, 2005

Respectfully submitted,

ROBERT E. BARRON, P.C.
P. O. BOX 1347
NEDERLAND, TEXAS 77627
(409) 727-0073

BY:/s/ Robert E. Barron
   ROBERT E. BARRON
   TBA NO. 01820800

ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

        I hereby certify that on April 22, 2005, a true and correct copy of the above and forgoing Brief in Support of Denying the Motion to Lift Automatic Stay filed by Christopher Pham shall be served via electronic means, if available, otherwise by regular, first class mail, to....

San and Nga Hoang
3801 Blackberry
Port Arthur, TX 77642

Dennis M. McElwee
c/o Melissa A. Haselden, Attorney
Eleven Greenway Plaza
Ste. 1400
Houston, TX 77046

Melissa A. Haselden
Weycer, Kaplan, et al
Eleven Greenway Plaza, Ste. 1400
Houston, TX 77046
(713) 961-9045


Christopher Pham
Melissa A. Haselden
Weycer, Kaplan, et al
1400 Summit Tower
Eleven Greenway Plaza
Houston, TX 77046

Dennis McElwee
Schecter, McElwee & Shaffer
3200 Travis Third Floor
Houston, TX 77006


  This service complies with Local Rules of Bankruptcy Procedure 9013(e).


                 /s/ Robert E. Barron
                 ROBERT E. BARRON