IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 05-10151-13-BP |
| | (Chapter 13) |
| SAN NGOC HOANG | |
| *Dba* MASTER DALE and | |
| NGA TRAN HOANG | |
|         Debtors | |
| CHRISTOPHER PHAM | |
|         Movant | |
| VS. | |
| SAN NGOC HOANG | |
| *dba* MASTER DALE and | |
| NGA TRAN HOANG | |
|         Respondant | |

## PHAM'S BRIEF IN SUPPORT OF MOTION FOR RELIEF AND IN OPPOSITION TO MOTION FOR SANCTIONS, WITH CLOSING ARGUMENT IN SUPPORT

Comes Now Christopher Pham, a creditor and party in interest, who has moved to lift the stay against property of the estate, who briefs the odd conflux of issues present in this case invoking the jurisdictions of Admiralty and Bankruptcy law, both *in rem* jurisdictions.

### Summary

1. Just as the Bankruptcy Code makes property of the Debtor property of a judicially administered estate, the General Maritime Law makes injured seamen wards of the Admiralty Court. While Bankruptcy Law automatically stays proceedings against a Debtor or property of the estate, Admiralty Law automatically imposes a court-ordered lien upon the vessel for unpaid maintenance and cure. The case presented requires reconciliation of competing goals of Bankruptcy and

Admiralty Law. Other courts have resolved this issue in a manner favorable to the Movant, Mr. Pham, that recognizes Bankruptcy and Admiralty co-exist without one "trumping" another. In this case, Mr. Pham believes that the automatic stay does not apply to his maintenance and cure payments because they are support payments, but to the extent the stay exists, he asks this Court for relief to pursue his remedies before an Admiralty Judge.

2. In regard to the Sanctions Motion, the Movant failed in his burden of proof. Mr. McElwee never contacted the Debtor directly other than to send the pre-bankruptcy initial demand letter. After that letter, he dealt only with counsel, which he is privileged to do without violating the stay. Mr. McElwee, without notice of the stay, notified the Coast Guard of his client's maintenance and cure claim. However, this did not perfect or increase the priority of the Seaman's Lien – it only made the otherwise secret lien public. Moreover, as the Seaman's Lien is created and perfected by General Maritime Law, it cannot be removed, perfected, or dissolved by Mr. Pham. The Debtor was not injured by the notice to the Coast Guard. The notice's only effect is to make a secret priming lien public to prevent the seller from defrauding an unsuspecting purchaser who would buy the vessel subject to the lien.

## Article III § 2

3. The appropriate place to start is the genesis of Admiralty jurisdiction. Article III § 2 of the Constitution contains the only grant of federal admiralty authority. It makes the Article III judge a "judge of the admiralty". An Admiralty Judge acts as a guardian of seamen under laws that pre-date the Constitution.[1] This is because, for centuries before the founding of our nation, it was recognized that seamen at sea cannot freely contract with their masters. The seaman's contracts with

---

[1] "A case in admiralty does not, in fact, arise under the constitution or laws of the United States. These cases are as old as navigation itself; and the law admiralty and maritime, as it has existed for ages, is applied by our courts to the cases as they arise." *American Insurance Co. v. Canter*, 26 U.S. (1 Pet.) 511, 545-46, 7 L. Ed. 242 (1828).

his master are subject to scrutiny as if the seaman was incompetent or a minor. The seaman cannot freely bargain for lost wages or medical care.

4. Thus, Courts of Admiralty are particularly solicitous of seaman's rights and protect them from being overreached by masters and shipowners as wards of the court. In addition to protecting seamen in their contractual dealings with masters and shipowners[2] the wardship theory has been applied to matters pertaining to the interpretation of statutes affecting seamen[3] as well as rules pertaining to maintenance and cure. Id.

**Maintenance & Cure Arises from the Seaman's Status as a Ward of the Article III Court**

5. The ancient duty of the vessel and shipowner to provide the sick and injured seaman with maintenance and cure arises from the unique relationship existing between the seaman and his vessel. The obligation to provide for the maintenance and cure of seaman becoming ill or injured during the period of their service is based on a judicially-created hypothetical contract[4] based solely on one's employment as a seaman.[5] The obligation is an incident to the status of the seaman in the employment of the ship[6] and is not dependent on any agreement by the contracting parties.[7]

6. Shipowners normally can limit their liability. However, a claim for maintenance and cure is based on a judicially overseen contract and is therefore not subject to such a limitation.[8]

**A Seaman Must Bring His *In Rem* Maintenance and Cure Claim in Admiralty Court**

7. A seaman's claim for maintenance and cure can be brought either in personam against

---

[2] See, *Garrett v. Moore- McCormack, Inc., et al,* , 317 U.S. 239, 242 (1942).
[3] *Socony Vacum Oil Co. v. Smith,* 305 U.S. 424 (1938), *The Arizona, et al v. Anelich,* 298 U.S. 110 (1936).
[4] *Aguilar v. Standard Oil Co. of New Jersey,* 318 U.S. 724 (1943); *DeZon v. Am. President Lines,* 318 U.S. 660 (1943).
[5] *Cortes v. Baltimore Insular Lines,* 287 U.S. 367 (1932).
[6] *O'Donnell v. Great Lakes Dredge & Dock Co.,* 38 U.S. 36 (1839).
[7] *Cortes, supra.*
[8] *Murray v. New York Central Railroad Company,* 171 F. Supp. 80 (S.D.N.Y. 1959) and *Hugney v. Consolidated Coal Company,* 345 F. Supp 1079 (E.D. Pa. 1971)

the vessel owner[9] or in rem against the vessel.[10]

8. The in personam claim against the owner may be brought in either federal court or in state court under the savings to the suitors clause.[11]

9. The in rem claim to enforce a lien against the vessel can only be brought in a federal court sitting in Admiralty.[12]

10. The Duty to Provide Maintenance and Cure is a continuing one[13]. The duty to provide maintenance and cure is a continuing duty that arises each day the seaman remains unfit for duty or until he reaches maximum medial cure. *In the Matter of Sea Ray Marine Services,* 105 B.R. 12 (E.D. La. 1989).

### Maritime Lien for Maintenance & Cure

11. It has long been held that a seaman's claim for maintenance and cure is created by operation of law. It is regarded as "wages in another form".[14] Justice Story was of one opinion that a claim for maintenance and cure is in the nature of additional wages during the period of sickness and was comparable to suits for penalty wages for failure to provide food and provisions.[15]

12. Pham's claim is the highest priority claim against the vessel. Crews wages are the highest priority among maritime liens.[16] It is not fair to "lump" all maritime liens into one category, because, while many maritime liens act like land liens, the Maintenance and Cure lien can be

---

[9] *Aguilar.*
[10] *The Transfer No. 12,* 221 F. 409 (2nd Cir. 1915).
[11] *Calmar; Garrett supra.*
[12] *The Transfer No. 12, supra.*
[13] *Calmar, supra.; In the Matter of Sea Ray Marine Services,* 105 B.R. 12 (E.D. La. 1989).
[14] *Harden v. Gordon, et al,* 11 F.Cas. 480 (Cir. Ct. D. Me. 1823) (Story, J.).
[15] *Harden, supra.*
[16] *Bender Welding and Machine Company v. M/V Sovereign Opal,* 415 F.Supp. 772 (S.D. Ala. 1976).

"secret", priming, and will bind subsequent bona fide purchasers.[17]

### A Seaman's Maintenance & Cure is not Reduced by Family's Consumption

13. The Fifth Circuit has held that maintenance is not limited to actual costs of living:

> However, if the seaman's actual expenses are not sufficient to afford him food and lodging that are reasonably adequate, the court should award maintenance sufficient to provide reasonable food and lodging, even if the award exceeds the seaman's actual costs.

*Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 588 (5th Cir., 2001).

14. Seamen are given a light evidentiary burden, with uncorrorborated testimony as to expenses as the rule. *Yelverton v. Mobile Laboratories, Inc.*, 782 F.2d 555, 558 (5th Cir. 1986) (noting that "the evidence before the court often consists solely of the seaman's testimony"). Moreover, there is no magic formula to prove maintenance, and the burden is "feather light":

> The burden of producing evidence of expenses is 'feather light' and a court may award reasonable expenses, even if the precise amount of actual expenses is not conclusively proved.

*Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 588 (5th Cir., 2001); quoting *Yelverton, supra.*.

### Food Stamps is not a Substitute for a Seaman's Lien for Cure

15. Admiralty law notes that when a Seaman is actually treated for free (but not by Medicaid/Medicare[18]) he has no claim for cure – defined as medical expenses actually incurred. However, the Seaman has a claim for maintenance even when he receives food stamps. His claim for maintenance is based on his judicially-created employment contract with the ship and its master, not on actual expenses..

16. The issue of the availability of Medicaid/Medicare offers a troublesome choice. The

---

[17] "It is well-established that maritime liens are secret and unrecorded, that is, they are valid without possession or filing...." *United States v ZP Chandon*, 889 F2d 233 (9th Cir. 1989).

[18] *In Re RJF International*, 332 F. Supp. 2d 458 (D. R.I. 2004).

Court could encourage debtors to shirk their responsibilities as vessel masters by requiring injured seamen to seek welfare, or it could require the vessel master to pay under its maritime law obligations. One would never require an injured worker on land to ignore his workmen's compensation rights in favor of Medicaid/Medicare. Why would such a policy be permitted for vessel owners? Medicare has thankfully resolved that issue by enactment of the Medicaid/Medicare Secondary Payer Statute "MSP" enacted in 42 U.S.C.A. § 1395y(b)(2)(A)(ii) and 42 C.F.R. § 411.20 et seq. that prohibits the Department of Health and Human Services from paying benefits when someone else can be compelled to pay them.

17. This issue was addressed by the Court in *RJF*:

> The Petitioner argues that Avery's eligibility for Medicare, an alleged type of cost-free medical treatment, bars him from an entitlement to cure payments. Avery and HHS assert two defenses to the Petitioner's argument: (1) Medicare is not "free" and therefore does not end RJF's obligation to provide cure payments; and (2) even if Medicare amounts to "free" medical treatment under maritime common law, the MSP statute bars HHS from providing Medicare payments when other payors (in this case, RJF or its insurer) are obligated to make payments.

*In re RJF International*, 332 F. Supp 2d at 463. The Court then concluded:

> These principles, considered in light of the Medicare cost-saving purpose of the MSP, persuade the Court that RJF's yacht insurance policy is the type of liability insurance policy covered by the MSP. Consequently, this Court holds that the MSP statute bars the Petitioner from shifting the financial burden of its cure obligation for Avery's medical expenses to the Medicare system.

*In re RJF International*, 332 F. Supp 2d at 467.

18. Medicaid and Medicare are not "free". They do not terminate the obligation to make cure payments, and (despite Fifth Circuit cases that pre-date the MSP statute) do not reduce the amount owed for cure.

### How Bankruptcy Courts Deal with Maintenance and Cure

19. Bankruptcy Courts rarely deal with maintenance and cure claims. When they do, they

are likely judging the situation at bar – enforcement of maintenance and cure claim against a Debtor who sought refuge in the Bankruptcy Court.

20. In pre-hearing briefing, Mr. Pham pointed out that existing case law holds that maintenance and cure obligations are not subject to the automatic stay. *In the Matter of Sea Ray Marine Services,* 105 B.R. 12 (E.D. La. 1989). In rebuttal, the Debtor argued that *Sea Ray* is bad law.

21. Mr. Pham would note that while *Sea Ray* initially seems counter-intuitive, it is good law based on sound policy. The automatic stay does not apply to maintenance and cure claims because the claim is akin to court-ordered support of an incompetent ward of the court. (See ¶5-6, supra). Indeed, that is *precisely* what maintenance and cure means--paying support for the ward. It is quite like child support.

22. The pre-trial briefs of the Debtors concede that a lien is automatically created and perfected by the maintenance and cure claim. (Pre-trial Brief on Motion for Relief p.3 ¶7). The Debtors nevertheless argue purchase money "maritime liens" (not maintenance and cure liens) cannot be foreclosed on in violation of the stay. Id. This is equivocation. A purchase money "hull lien" is different from the maintenance and cure lien. The case cited by the debtors *In re Louisiana Ship Management, Inc.*, 761 F.2d 1025, 1026 (5th Cir., 1985) dealt with enforcement of a contractual lien by a business, not a seaman's lien for support in the form of maintenance and cure. Likewise, Debtor cites *Mamer v. Apex R.E.&T.*, 59 F.3d 780, 781 (8th Cir. 1995) for the proposition that "the 8th Circuit had no trouble finding that the automatic stay applies to maritime liens"[19], but that case involved a Jones Act claim, not a maintenance and cure claim based on the wardship of the seaman. Neither of these cases contradict the holding or policy behind *Sea Ray*.

23. The Debtor cited dicta from the Fifth Circuit's case of *Cueva*. The *Cueva* case stated in dicta that Section 362 lists 18 exceptions to the automatic stay, and that Section 549(c) is not one.[20] The Perishable Agricultural Commodities Act is also not on the list of 18. Not all "exceptions" to the stay are specifically on the list because they do not appear as straightforward "exceptions". *Cueva* is a red herring. Maintenance and cure obligations can arise both pre- and post-bankruptcy, depending on when bills are incurred and whether the seaman has reached maximum cure. However, to segregate these obligations to pre and post petition obligations would allow Debtors to avoid their obligations to care for their wards and violate public policy.

## Admiralty Law and Policies Support Some Form of Stay Relief

24. The Debtors have not claimed that Mr. Pham does not have a lien. To the contrary, in pre-trial briefs they essentially admit such a lien exists. At trial, they focused on the availability of Medicare and Food Stamps in an effort to minimize the lien. However, as shown above, those facts are not relevant.

25. Bankruptcy makes exceptions for obligations in the nature of support. When it was enacted, the Bankruptcy Code was not intended to override the well established admiralty law. *United States v ZP Chandon*, 889 F2d 233 (9th Cir. 1989) ("it is unlikely that the drafters of the Bankruptcy Act would have casually neglected to express its intention to rewrite a "sacred" principle of maritime law."). Likewise, it is doubtful that Congress would give any maritime claimant, even a contract lien claimant, carte blanche to circumvent the bankruptcy process. What is sought here is limited and specific relief – to enforce rights to maintenance and cure, and none other.

---

[19] Brief in opposition to Motion for Relief at ¶21.
[20] The Bankruptcy Reform Act, enacted April 20, 2005, reversed *Cueva* by requiring recordation of a notice of bankruptcy to prevent a bona fide purchaser at foreclosure from acquiring rights to the property. Also, the Bankruptcy Reform Act makes support obligations a priority claim entitled to treatment above other priority claims.

## Automatic Stay Sanctions Response

26. The Debtors have not been injured by a violation of the automatic stay and appeared to concede as much. The only injury claimed was the fear Ms. Pham had that the Debtor's boat would be seized – based on Mr. McElwee's letters to her counsel, not to her.

27. This court should not characterize letters to counsel representing a Debtor to constitute a stay violation, as bankruptcy lawyers need to be able to talk and negotiate with claimants. Also, the letters did not seek to commence or continue an action against the Debtor or estate property. The offending letter – to the Coast Guard -- did not injure the Debtor, create or perfect a lien. The uncontradicted evidence is that the letter to the Coast Guard was sent without knowledge of the stay and only made a secret lien known. The only purpose served by making the lien secret again would be to allow the boat to be sold to an unsuspecting purchaser – subject to the lien.

28. The goal of the automatic stay is to allow the debtor breathing room and allow for centralization of proceedings. It has had that effect in this case. Mr. McElwee has not arrested the vessel, regardless of the maritime law, because he respects the jurisdiction of this Court. Mr. McElwee's client sought relief from the stay, respecting that the automatic stay may apply. Regardless whether stay applies, Mr. Pham has hired bankruptcy counsel and proceeded with caution.

29. The Stay has not been violated by Mr. McElwee's correspondence. To the contrary, its principles have been upheld. To the extent Mr. McElwee offended Debtor's counsel, he has apologized and again sincerely apologizes. However, the stay was not violated and Mr. Pham has not taken action (such as commencement of an admiralty action in an Article III court) that this Court might construe as a violation of the stay.

## Conclusion

30. The evidence shows no intentional violation of the stay. Mr. McElwee took no action against the Debtor or property of the estate based on a prepetition obligation. Mr. McElwee sought payment of his client's of the maintenance and cure claim from Debtor's counsel, which is reasonable, not actionable.

31. The Debtor must pay Mr. Pham his maintenance and cure payments. Failure to do so has harmed Mr. Pham. The Debtor's demand that Mr. Pham go on welfare is unfair, as the Debtor shoulders the duty to care for seamen. The stay should not apply to maintenance and cure claims because such claims are essentially support obligations. To the extent the stay applies, it should lift to allow Mr. Pham to enforce his rights in an Article III court.

DATED:    May 6, 2005

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:: _/s/ Hugh M. Ray, III_

HUGH M. RAY, III
State Bar. No. 24004246
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 961-9045
Facsimile:   (713) 961-5341

ATTORNEYS FOR DENNIS MCELWEE
AND CHRISTOPHER PHAM

## CERTIFICATE OF SERVICE

On May 6, 2005, I hereby certify that a true and correct copy of the foregoing document has been served via electronic mail and/or by first class regular mail, postage prepaid, as follows:

Robert E. Barron
P.O. Box 1347
Nederland, TX 77627

_____
Hugh M. Ray, III