# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | § | |
|---|---|---|
| IN RE: | § | CASE NO. 05-10151-13-BP |
| | § | (Chapter 13) |
| SAN NGOC HOANG | § | |
| *dba* MASTER DALE and | § | |
| NGA TRAN HOANG | § | |
| Debtors | § | |

## PHAM'S RESPONSE TO DEBTORS' MOTION TO MODIFY PLAN (DOCKET #58)

Comes Now Christopher Pham, a creditor and party in interest, who responds to the Motion to Modify Plan filed by the Debtors, stating as follows:

### Factual Background

1. The Debtors have filed a motion to modify their Chapter 13 Plan to surrender their shrimp boat, the M/V Master Dale ("Vessel"), to Texas State Bank (the "Bank") "and Mr. Pham", but in fact will only turn the boat over to the Bank. Mr. Pham, who was injured while a seaman on the vessel, has a seaman's lien for maintenance and cure, which primes the Bank's contractual lien of as a matter of law. If the Debtor is to surrender the vessel, it must be to the first lienholder - Mr. Pham.

2. Mr. Pham moved for relief from the stay to liquidate his claim against the vessel, and this Court granted relief from the stay. Once liquidated, he will return to this Court to enforce his lien on the vessel.

3. After the stay lifted, Mr. Pham promptly prosecuted his case against the vessel in the U.S. District Court and has submitted pleadings to the magistrate judge. The District Court is determining the extent of Mr. Pham's lien.

4. In the plan modification (Docket #58), the Debtors propose to relinquish the vessel to

Mr. Pham and also the Bank, the contractual lienholder. However, only one person can possess the vessel at a time and Mr. Pham holds the first lien. Mr. Pham is entitled to the vessel because his maintenance and cure claim is first in priority.

**<u>The Debtor Fails to Meet the Standard for Post-Confirmation Modification</u>**

5. To modify a plan post-confirmation, the Debtor must meet the requirements of 11 U.S.C. §1329, which states, in relevant part:

> 1329. Modification of plan after confirmation
>
> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan . . . .

6. Section 1329 does not authorize the Debtors to abandon an asset to a secondary secured creditor while ignoring the rights of the first lienholder. The Debtors are not increasing or reducing a payment stream, they are not changing dates of payment, and they are not reducing a claim that was otherwise satisfied. Instead, they intend to use the vessel itself as payment - but only a payment to the Bank. No provision is made to satisfy the secured claim of Mr. Pham.

7. Section 5 of the plan states that the stay will lift as to the claims of "Texas State Bank/Chris Pham" against the vessel. This is an improper classification and improper satisfaction of the claim. The claims of Texas State Bank and of Mr. Pham are of two different priorities. Specifically, Mr. Pham's lien is a first lien. Accordingly, the plan should terminate the stay as to Mr. Pham only.

## Maritime Lien for Maintenance & Cure Primes All Existing Liens, Including Bank Liens

8. Maritime Maintenance and Cure claims have priority over contract liens, including purchase money liens. As the Ninth Circuit noted, maritime liens are in reverse order from contractual liens -- the last in time is usually the highest priority:

> We also pointed out the distinction between liens arising under maritime law and those resulting from ordinary business transactions:
>
>> In the leading treatise on maritime law, it is pointed out that maritime liens have extraordinarily little in common with land liens, including consensual security interests. G. Gilmore & C. Black, The Law of Admiralty 586-89 (2d ed. 1975). Land liens and maritime liens are "two unlike things . . . called by the same name." Id. at 589. In particular, it is well-established that maritime liens are secret and unrecorded, that is, they are valid without possession or filing, while Article 9 security interests do require filing or possession. Id. at 586-89. **Furthermore, maritime liens generally have priority in reverse chronological order, while Article 9 security interests generally have priority in normal chronological order.** Id. Thus, it is most unlikely that the drafters of the U.C.C. intended to create a single statute that would apply in an identical manner to both personal property financing on land and to maritime liens. It is even more unlikely that the drafters would have neglected to mention an intention to entirely rewrite the long-standing filing and priority rules of maritime law.

*United States v. ZP Chandon*, 889 F.2d 233, 237 (9th Cir., 1989) (quoting from *In re Pacific Caribbean Shipping (USA), Inc.*, 789 F.2d 1406 (9th Cir. 1986) (emphasis added)).

9. The Fifth Circuit has agreed, "Wages due seamen are given utmost protection by admiralty courts. They are entitled to a preferred maritime lien of the highest rank." *First Nat'l Bank v. M/V Lightning Power*, 776 F.2d 1258, 1262 (5th Cir. 1985). In *Lighting Power*, the seaman reversed a non-collusive judicial foreclosure because his first lien rights had not been adjudicated.

10. It has long been held that a seaman's claim for maintenance and cure is created by operation of law. It is regarded as "wages in another form".[1] Justice Story was of one opinion that a claim for maintenance and cure is in the nature of additional wages during the period of sickness and was comparable to suits for penalty wages for failure to provide food and provisions.[2]

---

[1] *Harden v. Gordon, et al,* 11 F.Cas. 480 (Cir. Ct. D. Me. 1823) (Story, J.).
[2] *Harden, supra.*

**11.** Pham's claim is the highest priority claim against the vessel. Crews' wages are the highest priority among maritime liens.[3] His lien is special – not even like all other maritime liens, because, while many maritime liens act like land liens, the Maintenance and Cure lien can be "secret", priming, and will bind subsequent bona fide purchasers.[4]

## Conclusion

12. The Debtor must pay Mr. Pham his maintenance and cure payments and, until he does, Mr. Pham may assert his lien rights against the vessel. At this point, the amount of the lien is still unliquidated and subject to determination by an Article III court. Nevertheless, it appears that Mr. Pham's lien exceeds the value of the boat based on the facts shown at the trial of the Motion for Relief. Thus, the Debtor's Motion to Modify Plan to relinquish the vessel to the bank should be denied to the extent it would do so in contravention of Mr. Pham's lien. To the extent the Debtors will abandon the vessel only to Mr. Pham, the relief can be granted.

DATED: June 29, 2006

                Respectfully submitted,

                WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

                By::_____
                    HUGH M. RAY, III
                    State Bar. No. 24004246
                    Eleven Greenway Plaza, Suite 1400
                    Houston, Texas 77046
                    Telephone: (713) 961-9045
                    Facsimile: (713) 961-5341
                    ATTORNEYS FOR CHRISTOPHER PHAM

---

[3] *Bender Welding and Machine Company v. M/V Sovereign Opal*, 415 F.Supp. 772 (S.D. Ala. 1976).

[4] "It is well-established that maritime liens are secret and unrecorded, that is, they are valid without possession or filing…." *United States v ZP Chandon*, 889 F2d 233 (9th Cir. 1989).

## CERTIFICATE OF SERVICE

On June 29, 2006, I hereby certify that a true and correct copy of the foregoing document has been served via electronic mail and/or by first class regular mail, postage prepaid, as follows:

Robert E. Barron
P.O. Box 1347
Nederland, TX 77627

Texas State Bank
3900 N. 10th St.
McAllen, Texas 78501

                                                                    Hugh M. Ray, III